## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Wan Chen Wu, also known as
Lilian Wu, by her general
guardian, Pi Yu Tien, Pi Yu Tien,
individually, and Ju Peng Wu,
individually,

                            Plaintiffs,

                                              Civil No. 05-1636 (RHK/JSM)
v.                                            **MEMORANDUM OPINION
AND ORDER**

Lucas Sorenson,

                            Defendant.

---

James S. Ballentine, Sharon L. Van Dyck, James R. Schwebel, Peter W. Riley, and William R. Sieben, Schwebel Goetz & Sieben, PA, Minneapolis, Minnesota, for Plaintiffs.

Katherine A. McBride, Gary W. Hoch, John C. Hughes, and B. Shane Barnes, Meagher & Geer, PLLP, Minneapolis, Minnesota, for Defendant.

---

## Introduction

      This is the second action arising out of an accident that left Plaintiff Lilian Wu

brain-damaged.[1]  Wu and Defendant Lucas Sorenson were both students in a golf class when

Sorenson—then 11 years old—hit a golf ball that struck Wu in the temple, causing her

severe injuries.  In this action, Wu alleges that Sorenson was negligent in hitting the golf

---

[1] Plaintiffs in this action are Wan Chen Wu, also known as Lilian Wu; Pi Yu Tien, Lilian Wu's mother, as Lilian's general guardian and in her individual capacity; and Ju Peng Wu, Lilian's father, in his individual capacity.  (Compl. § V.)  The Court will refer to the plaintiffs collectively, and Lilian Wu individually, as "Wu."

ball that injured her, and that his negligence was the proximate cause of her injuries.

Sorenson has moved for summary judgment, arguing in part that he did not owe a duty of

care to Wu because, under the undisputed facts of the case, the duty of care for Wu's safety

was shifted to the golf class instructor.   For the reasons set forth below, the Court will

grant the Motion.

## Background

**A.      The Golf Class and the Accident**

During the 2002-2003 school year, Wu (age 16) and Sorenson (age 11) were both

taking a golf class at Shattuck-St. Mary's School ("SSMS"), a college preparatory boarding

and day school.  The class was taught by Greg Paine, who is a member of the Professional

Golf Association ("PGA"), and holds an A-1 classification, meaning that he is "a head golf

professional at a green grass facility."  (Paine Dep. Tr. at 8.)  The class was conducted

indoors in a netted structure.  (Id. at 28-29.)  During class, six students would line up on six

mats (or "stations") along the west side of the structure and hit balls into the net on the east

side.  (Id. at 29.)  Students were instructed not to go to the east side of the structure to

retrieve balls unless (1) Paine stopped the class, or (2) the student made verbal or non-

verbal contact with anyone in a position to hit a ball.  (Id. at 45.)  Students were also

instructed not to hit balls if anyone was in the east side of the structure retrieving balls.  (Id.

at 31.)

On January 17, 2003, Paine was giving Sorenson one-on-one instruction in an effort

to improve his back swing.  (Sorenson Dep. Tr. at 33.)  On that day, Paine's instruction

proceeded as follows: Paine placed a ball on a tee; Sorenson then "addressed the ball," which involved moving into position to strike the ball, adjusting his grip on the club, and looking at his "target," (id. at 59-60); after Paine made any necessary adjustments to Sorenson's position and grip, Sorenson would commence his back swing, (id. at 60-61); Sorenson then stopped his swing after bringing the club back so that Paine could make adjustments, which consisted of Paine putting his hands on Sorenson's shoulders as well as the club to make sure both were in proper position, (id. at 61); once Sorenson's back swing was adjusted to Paine's liking, Paine stepped away and told Sorenson to swing (id. at 62).

As Sorenson began each swing during Paine's one-on-one instruction, Sorenson was looking at the ball and concentrating on his swing.  (Sorenson Dep. Tr. at 52-62.)  As Paine testified:

> Q: And it's at that point, now, after you put Lucas into position—
>
> A: Yes.
>
> Q: —that Lucas was supposed to look to make sure nobody was out there.
>
> A: That's incorrect . . . when I put Luke in the position, I mean, he's got to look at the ball to hit it.  So if that's going to happen, that would be before he goes—before I put him into that position.

(Paine Dep. Tr. at 51).  Sorenson would complete his swing and hit the ball only after Paine instructed him to do so.  As Sorenson testified:

> Q.  Then he's got you in the position that he wants you to be for your back swing and actually has his hand on you, does he not?
>
> A.  Yes.

3

Q.  You've got to look at the ball because you're going to be striking the ball?

A.  Yes.

Q.  Then he backs away and says hit?

A.  Yes.

Q.  Swing the club?

A.  Yes.

(Sorenson Dep. Tr. at 56-57; see also id. at 44-45 (Q: "Now, for each of these swings . . .
Mr. Paine would have said swing and then you would swing?" A: "Yes."  Q: " . . . [t]hat's
what triggered you to swing, correct?" A: "Yes.").)  Between the time Sorenson
commenced his back swing and the time he hit the ball, he relied on Paine to instruct him
how and when to swing.  Sorenson testified: "that's kind of [Paine's] job, to make sure
[Paine] was the one that said swing.  It was kind of [Paine's] job to tell when to."  (Id. at 35.)

On the third or fourth repetition of this instructional process, a ball that Sorenson
hit sliced two or three stations to the south, striking Wu in the temple as she retrieved balls
toward the east side of the structure.  (Id. at 34, 39, 40.)  At the time Wu was struck, she
was roughly 20-25 feet in front of her hitting area.  (Paine Dep. Tr. at 40.)  The blow to
Wu's head resulted in severe and permanent brain injuries.  Neither Paine nor Sorenson had
noticed that Wu had stepped away from her hitting station on the west side of the structure
to retrieve balls prior to Sorenson's swing.

**B.    Previous Action against Paine and SSMS ("Paine/SSMS")**

On August 8, 2003, Wu brought suit against Paine and SSMS alleging that

4

negligence on the part of Paine and SSMS caused her injuries.[2]  (Paine/SSMS Compl. §§ VI,

VII.)  Sorenson was not joined as a party in Paine/SSMS.[3]  In Paine/SSMS, Wu argued that

(1) Paine and SSMS were negligent in how they designed the golf class facility; (2) Paine

was negligent in his instruction and supervision of the class and Sorenson; and (3) SSMS

was negligent in its supervision of Paine and the golf class.  (Id.)

        In opposition to the Defendants' summary judgment motion in Paine/SSMS, Wu

submitted the opinions of eight "experts"—golf professionals and educators—each of

whom opined that elements of the facility's design and/or Paine's instruction (or lack

thereof) insufficiently guarded against injury.  (Paine/SSMS Mem. in Opp'n at 14-17;

McBride Aff. Exs. L, M, N, O, P, Q, R, S.)  One opined that Paine's instruction and

supervision during the golf class was inadequate because he "created confusion and

ambiguity as to correct procedures for retrieving balls . . . ."  (McBride Aff. Ex. M at 4.)

According to that professional, Paine also "failed to enforce the rules he had created" and

"failed to look to make sure it was safe before allowing Luke Sorenson to strike the ball."

(Id.)  Another opined that Paine was negligent when he violated his own rule by failing to

---

        [2]Wu v. Shattuck-St. Mary's School, Civ. No. 03-4870 (DWF/JSM).

        [3]Wu did not offer any explanation in her memorandum submitted in opposition to
the instant Motion regarding why she did not join Sorenson as a party in Paine/SSMS.  At
oral argument, upon questioning from the undersigned, her counsel "explained" that it was
"optimism and realism" that kept Wu from suing Sorenson in Paine/SSMS.  At best, this
explanation is lacking in clarity; a more forthright explanation would be that asserting a
claim against Sorenson in Paine/SSMS would have weakened the claims Wu brought against
Paine and SSMS because it was Wu's position in that litigation that Paine and SSMS were
completely at fault.  Having disposed of Paine/SSMS, Wu apparently feels free to argue a
totally inconsistent position here.

look into the area where Wu was standing before allowing Sorenson to hit the ball.

(McBride Aff. Ex. R.)  Yet another golf professional hired by Wu in Paine/SSMS opined

that:

> [Paine] did have a responsibility to make certain Mr. Sorenson did not strike
> a ball when someone (Ms. Wu) was in the area where she might be struck.
> Mr. Sorenson testified he was concentrating on what he was being taught and
> relied on Mr. Paine to provide the lookout and tell him if he should not strike
> the ball.  (Sorenson deposition at p. 35.)  In my opinion, that would be the
> normal situation, especially for a beginner or inexperienced golfer.

(McBride Aff. Ex. N. at 2.)

The Court denied Defendants' summary judgment motion in Paine/SSMS, holding

that Wu's claims were not barred by the primary assumption of risk doctrine because Wu's

claims were "akin to those involving enhancement of risk, negligent maintenance of a

facility, or negligent supervision of a sporting activity."  (Paine/SSMS SJ Order at 9.)  Thus,

the Court concluded that the "apportionment of negligence between parties is an issue that

should be left to a jury."  (Id.)  The parties subsequently entered into a settlement

agreement, pursuant to which Paine and SSMS paid Wu $10 million.  (McBride Aff. Ex. K.)

## C.     The Instant Action

In the instant action, Wu claims that Sorenson breached his duty of care to Wu when

he hit the golf ball that struck Wu in the head, causing her injuries.  She alleges that at the

time of the accident, "Sorenson was standing at a golf ball tee mat receiving instruction

from instructor Paine," and that "without looking into the hitting area and without warning . .

. Wu that he would strike a golf ball, . . . Sorenson carelessly and negligently struck a golf

ball which hit Lilian Wu in her head." (Compl. § V, ¶¶ 10-11.) Neither Paine nor SSMS is a party to this action.

## Standard of Decision

Summary judgment is proper if, drawing all reasonable inferences favorable to the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. See Celotex, 477 U.S. at 322; Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). The court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. See Graves v. Arkansas Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. See Anderson, 477 U.S. at 256; Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

## Analysis

Sorenson argues that he is entitled to summary judgment because: (1) he owed no duty to Wu (Mem. in Supp. at 7-18); (2) he is entitled to indemnity from Paine and SSMS which creates a circuity of indemnification barring Wu's claim against him (id. at 18-21);

(3) Wu failed to plead recklessness, which is the standard to be applied to conduct

occurring during sporting events (id. at 21-24); and (4) Wu primarily assumed the risk that

she might be hit by a golf ball when she walked into the zone of danger while other players

were still practicing (id. at 25-30).  The Court concludes that the duty analysis is

dispositive of the instant Motion.

The essential elements of a negligence claim are: (1) the existence of a duty of care;

(2) breach of that duty; (3) an injury; and (4) the breach of the duty was the proximate cause

of the injury.  Lubbers v. Anderson, 539 N.W.2d 398, 401 (Minn. 1995).  Thus, "[e]ssential

to any negligence claim is the breach of a duty of care owed to the plaintiff."  Reimer v.

City of Crookston, 326 F.3d 957, 961 (8th Cir. 2003) (applying Minnesota law) (citation

omitted).  "Whether a legal duty exists is generally a question of law to be determined by

the court."  Id. (citation omitted).  "However, where the existence of a duty turns upon

contradicted facts, those facts must be submitted to a jury for resolution prior to the

court's legal conclusion on the issue."  Id. (citation omitted).

According to Sorenson, the undisputed facts here compel the conclusion that he

owed no duty to Wu.  Rather, he argues that Paine "assumed [Sorenson's] duty, relieving

[Sorenson] of any responsibility he had to [Wu]."  (Mem. in Supp. at 8.)  Sorenson relies on

the Restatement (Second) of Torts (the "Restatement") § 452(2), and Sandborg v. Blue

Earth County, 615 N.W.2d 61 (Minn. 2000), a Minnesota Supreme Court decision applying

§ 452(2), for the proposition that any duty he owed to Wu shifted to Paine under the

undisputed facts of this case.  (Mem. in Supp. at 8-13; Reply Mem. at 2-5.)  He also argues

that Wu is judicially estopped from claiming otherwise, based on the theory of liability she

advanced in the <u>Paine/SSMS</u> Litigation.[4]  (Mem. in Supp. at 13-15.)

Wu counters that "Sorenson retained his independent duty to use reasonable care

despite . . . Paine's presence."  (Mem. in Opp'n at 9.)  She relies on <u>Hollinbeck v. Downey</u>,

113 N.W.2d 9 (Minn. 1962) for the proposition that "<u>both</u> golfer and instructor retain

independent duties to use reasonable care [and] [t]he presence of the instructor does not

relieve the golfer of his duty."  (<u>Id.</u> at 10 (emphasis in original).)  Wu also argues that the

Restatement § 452 does not apply to the facts of this case because Sorenson's inconsistent

deposition testimony creates a factual dispute and the personal safety of third persons is at

issue.  (<u>Id.</u> at 11-12.)

The Restatement § 452(2) provides that:

> [w]here, because of lapse of time or otherwise, the duty to prevent harm to
> another threatened by the actor's negligent conduct is found to have shifted
> from the actor to a third person, the failure of the third person to prevent
> such harm is a superseding cause.

Restatement § 452(2).  The comments to § 452 elaborate that there are "exceptional cases"

where:

> because the duty, and hence the entire responsibility for the situation, has

---

[4]Sorenson further argues that the expert interrogatories and affidavits from <u>Paine/SSMS</u> are admissible in the instant action as admissions of a party opponent.  (Mem. in Supp. at 15-18.)  Wu responds that her expert reports from <u>Paine/SSMS</u> are not independently admissible at trial.  (Mem. in Opp'n at 5.)  However, she concedes that the reports "may be considered by the Court in this summary judgment proceeding."  <u>Id.</u>  Given the Court's holding in this matter, it need not decide whether the reports of the eight experts from <u>Paine/SSMS</u> would be independently admissible at trial.

been shifted to a third person, <u>the original actor is relieved of liability for the</u> <u>result which follows from the operation of his own negligence</u>.  The shifted responsibility means in effect that the duty, or obligation, of the original actor in the matter has terminated, and has been replaced by that of the third person.

<u>Id.</u>, cmt. d (emphasis added).  Although these "exceptional cases" may be ones in which the responsibility is shifted by express agreement, "[e]ven in the absence of any contract or agreement, the circumstances may be such that the court will find that all duty and responsibility for the prevention of the harm has passed to the third person." <u>Id.</u>, cmt. f.

In <u>Sandborg v. Blue Earth County</u>, 615 N.W.2d 61 (Minn. 2000), the Minnesota Supreme Court applied § 452 in holding that a "jailer-detainee relationship is an exceptional circumstance in which the duty to protect against a known possibility of self-inflicted harm transfers entirely to the jailer." 615 N.W.2d at 64.  The court considered the comments to § 452, and noted that the "factors used to determine whether a duty has shifted entirely to another are imprecise." <u>Id.</u> (citation omitted).  However, the court noted that the comments do provide some guidance. <u>Id.</u>  The comments list as factors to consider:

the degree of danger and the magnitude of the risk of harm, the character and position of the third person who is to take the responsibility, his knowledge of the danger and the likelihood that he will or will not exercise proper care, his relation to the plaintiff or to the defendant, the lapse of time, and perhaps other considerations. . . . [W]hen, by reason of the interplay of such factors, the court finds that full responsibility for control of the situation and prevention of the threatened harm has passed to the third person, his failure to act is then a superseding cause, which will relieve the original actor of liability.

Restatement § 452 cmt. f.

In <u>Sandborg</u>, the court considered some of these factors in determining that the

10

jailer had the entire duty to protect against a known possibility of self-inflicted harm.  615

N.W.2d at 64.  The court noted that under the facts before it, "the risk of self-harm was

significant and the county, which was in total control of [the detainee's] physical and

medical needs, was in a position to take measures to protect against the harm."  Id.  In

addition, the county's policies required that it take measures to address the risk of self-

harm.  Id.  Thus, the court held that "it was error to determine and apportion [the detainee's]

fault in the matter."  Id.

The undisputed facts of the instant case, when considered in the light of the factors

set forth in the comments to § 452, paint a picture in which Sorenson's comparative fault

ought not be determined and apportioned.  First, the "degree of danger and the magnitude of

the risk of harm" in these circumstances is clearly significant, as it was in Sandborg; and

Paine, as a certified golf professional and instructor of the golf class, appreciated the risk

of injury from driven golf balls.  (See, Paine Dep. Tr. at 36.)  He also appreciated the

increased risks that accompanied the golf class setting, which involved "junior

golfers"—juveniles who did not have the same attention spans as "grown up golfers," who

did more "unpredictable things" than "grown up golfers," and who "generally" did not have

the maturity and judgment of adults.  (Id. at 17-18.)

Second, the "character and position" of Paine—the instructor—is striking in

relation to Sorenson—an 11 year-old, sixth-grade student in a school setting.  While the

student-teacher relationship in itself does not mandate a shifting duty, here Paine was

giving Sorenson detailed, one-on-one instruction at the time of the accident; Paine was

guiding and coaching Sorenson at every stage of his swing; and Paine was telling Sorenson when to hit the ball.  (Sorenson Dep. Tr. at 55-62.)  On the day of the accident, the pattern of instruction between Paine and Sorenson was well established: after addressing the ball, Sorenson would bring his golf club back into his back swing, at which point Paine would stop the swing, put his hands on Sorenson's shoulders to make sure the shoulders were in the correct position, and would sometimes grab Sorenson's club to get it in the proper position.  (Id. at 56-57, 61.)  When Sorenson was in the back swing position, he was looking at the ball.  (Id. at 57; see also Paine Dep. Tr. at 62 ("When you actually strike the ball you're looking at the ball."); id. at 51.)  Once Paine had Sorenson in the proper position, he would back away from Sorenson and say "hit," or "okay," or "swing."  (Sorenson Dep. Tr. at 44-45, 57, 62.)  Sorenson understood this to mean that he could hit the ball.  (Id. at 62.)  At the time of the accident, Sorenson thought it was "kind of [Paine's] job, to make sure [Paine] was the one that said swing.  It was kind of [Paine's] job to tell when to."[5]  (Id. at 35.)

Third, Paine was clearly in a custodial and authoritative position over both Sorenson and Wu.  It is well established that schools and teachers have an obligation to "use ordinary

---

[5]One of Wu's eight experts retained in Paine/SSMS, who has over 50 years of experience as a golfer, including over 27 years as an official with the United States Golf Association, averred that Paine "did have a responsibility to make certain Mr. Sorenson did not strike a ball when someone (Ms. Wu) was in the area where she might be struck.  Mr. Sorenson testified he was concentrating on what he was being taught and relied on Mr. Paine to provide the lookout and tell him if he should not strike the ball. . . .  In my opinion, that would be the normal situation, especially for a beginner or inexperienced golfer."  (McBride Aff. Ex. N.)

care and to protect [the school's] students from injury resulting from the conduct of other students under circumstances where such conduct would reasonably have been foreseen and could have been prevented by the use of ordinary care." Gylten v. Swalboski, 246 F.3d 1139, 1143 (8th Cir. 2001) (quoting Sheehan v. St. Peter's Catholic Sch., 188 N.W.2d 868, 870 (Minn. 1971)).  "The relationship between a school district and its students creates the duty." Id. (citation omitted).  While this relationship is not one of jailer and detainee as in Sandborg, it is one that encompasses power differentials based on discrepancies in authority, knowledge, maturity, and age.  Thus, the relation of Paine to Sorenson, in the golf class and under the facts and circumstances precisely at the time the accident occurred, is consistent with Paine's assumption of "full responsibility for control of the situation and prevention of the threatened harm."[6]  Restatement § 452, cmt. f (1965).

> Wu relies on comment e to § 452, which provides, in its entirety:
>
> One way in which the responsibility may be shifted is by express agreement between the actor and the third person.  By contract, by gratuitous promise, or by fair implication from what is agreed, it may be understood that the third person has taken over full responsibility for the situation, and that the actor is relieved of his obligation.  In many cases this is not possible, since there are duties and obligations which cannot be delegated or shifted to another; and where the personal safety of third persons is threatened, it is probably true that normally any duty to exercise reasonable care for their protection cannot

---

[6]This is consistent with the averments of most of Wu's eight experts who were retained in Paine/SSMS.  For example, one of those experts, an Associate Professor of Education at St. Mary's University, stated that "it is the teacher's responsibility to supervis[e] at all times all students of the class.  The teacher is the 'captain of the ship.'" (McBride Aff. Ex. O.)  This is not, however, to suggest that the teacher-student relationship absolves the student of his duty of care to other students in general; this is but one factor the Court considers relevant to its analysis here.

> <u>be shifted.</u>  There are, however, exceptional cases, to which Subsection (2)
> applies.  It is beyond the scope of this Restatement to attempt to state when
> the duty can be shifted and when it cannot.  Assuming, however, that there is
> no rule of law, and no reason of policy to prevent its transfer, and that there is
> clear understanding that it is to be shifted, the original actor can be relieved
> of his duty; and in such a case the failure of the one who assumes it to act to
> prevent the threatened harm becomes a superseding cause.

Restatement § 452 cmt. e (emphasis added).  Wu argues that because there was "no clear

understanding between" Paine and Sorenson, and because the safety of third persons was at

stake, § 452 cannot apply to this case.  (Mem. in Opp'n at 13.)

The Court rejects Wu's reasoning.  With respect to the lack of a clear understanding

or express agreement between Paine and Sorenson, as noted above, comment f to § 452

clearly states that "<u>[e]ven in the absence of any contract or agreement</u>, the circumstances

may be such that the court will find that all duty and responsibility for the prevention of the

harm has passed to the third person."  Restatement § 452 cmt. f (emphasis added).  And, it

was the "exceptional circumstance" of the jailer-detainee relationship and comment f to §

452—not an express agreement—that the Minnesota Supreme Court relied upon to apply §

452 in <u>Sandborg</u>.  615 N.W.2d at 64.

The Court is similarly unconvinced with respect to Wu's argument that the

Restatement § 452 does not apply to this case because it involves injury to third persons.

The relevant statement in comment e relates to situations in which parties have attempted to

shift a duty through an express agreement or clear understanding.  Furthermore, regarding

the safety of third persons, the comment excludes from its position "exceptional cases,"

and the "illustrations" accompanying § 452 discuss situations involving the safety of third

14

persons to which the section would apply.  Restatement § 452, cmt. e, illus. 5-7.  The Court

is not persuaded by Wu's argument that § 452 is inapplicable to the facts of this case.

Accordingly, the Court determines that the totality of the circumstances surrounding and

giving rise to Wu's injuries constitute an "exceptional case" under § 452 and the duty of

care Sorenson owed to Wu was thereby shifted entirely to Paine.

Wu attempts to avoid this conclusion by arguing that Sorenson's own testimony

creates a factual dispute precluding summary judgment.  According to Wu, Sorenson

> testified that it was his obligation to not hit if another person was in the zone
> of danger.  Later in his deposition defendant Sorenson seemed to indicate
> that . . . Paine had some responsibility to look and decide whether [Sorenson]
> should hit.  Such discrepancies in Sorenson's testimony militate against
> summary judgment because they point out the critical factual disputes.

(Mem. in Opp'n at 12.)  What Wu neglects to point out, however, is that her own counsel

elicited testimony to put to rest any ambiguity resulting from precisely this inconsistency

between the "normal" class rules that students were to follow—including the rule that

students were to make sure no one was the zone of danger when they were hitting—and the

situation of one-on-one instruction that led to the accident at issue here.  Sorenson

testified upon questioning from Wu's counsel as follows:

> Q: Even though you knew generally as the person that was striking the ball
> that it was your job to look to make sure that nobody was out there before
> you struck the ball, you felt as if at the time you struck this ball that you
> had—that Mr. Paine had assumed that responsibility because he was
> instructing you?
>
> A: Yes.
>
> Q: And you were concentrating on what he was instructing you to do and you

thought that he was the person that would follow the rule and do the looking?

A: Yes.

Q: That's why you struck the ball without looking?

A. Yes.

Q: Because you thought that was his job to look to make sure nobody was out there?

A: Yes.

Q: That was his job to look to make sure that nobody was out there, wasn't it?
. . .

A: Yes.

Q: It's like the classroom situation at Shattuck-St. Mary's, the teacher is the person that's in charge, is that right?

A: Yes.

(Sorenson Dep. Tr. at 52-53 (emphasis added).)  Wu's counsel elicited testimony to this

effect from Sorenson throughout his deposition.[7]  (See id. at 35-36, 56-57, 61-62.)  In fact,

---

[7]This testimony is consistent with Wu's Supplemental Answers to Interrogatories submitted in Paine/SSMS, in which she responded to the question "Do you claim that the other student [Sorenson] . . . was negligent or somehow acted inappropriately to cause Plaintiff's injuries," as follows:

> It appears from the depositions to date, that Luke Sorenson was a victim of faulty, unclear and inconsistent rules and instruction by defendant Paine.  In addition, Luke Sorenson has testified that he was relying on defendant Paine to look to see if other golfers were present in the target area and to warn Luke if there were golfers present before Luke swung the club.  These would appear to be fact issues, however.

(McBride Aff. Ex. U.)

Wu relied on this testimony to Oppose Paine's Motion for Summary Judgment in

Paine/SSMS.[8]  (Paine/SSMS Mem. in Opp'n at 11.)  In Paine/SSMS, Wu argued that

Sorenson—"in sixth grade when the accident occurred"—testified that "it was Mr. Paine's

job to look to see if it was okay for Luke to swing . . . Lucas relied on Mr. Paine to make

sure it was okay for him to hit the ball because Lucas was concentrating on his swing."  (Id.

(citing Sorenson Dep. Tr. at 35, 53).)  Rather than creating issues of material fact,

Sorenson's testimony confirms that the factual circumstances giving rise to the accident

were controlled by Paine.  In addition, the fact that Wu argued so strenuously in

Paine/SSMS for a position that is so incongruous with her position here—based on the very

facts she now disputes, and without having joined Sorenson in that litigation—only serves

to bolster the Court's conclusion that this is indeed an "exceptional case" under § 452.

        In a further attempt to avoid summary judgment, Wu relies on Hollinbeck v.

Downey, 113 N.W.2d 9 (Minn. 1962), for the proposition that both golfer and instructor

owe duties of care to fellow golfers on a driving range under Minnesota law.  (Mem. in

Opp'n at 10.)  In Hollinbeck, the defendant—an adult—was practicing with an instructor on

a practice fairway when he struck a golf ball that hit a caddy as the caddy was running toward

---

        [8]Sorenson argues that the arguments made by Wu in Paine/SSMS should preclude
Wu from arguing that Sorenson had a duty of care in this instant action under the doctrine
of judicial estoppel.  (Mem. in Supp. at 13-15.)  While Wu's arguments in Paine/SSMS are
relevant here, the Court does not hold that Wu is judicially estopped from arguing that
Sorenson owed a duty of care to Wu.  See Hossaini v. Western Missouri Med. Ctr., 140
F.3d 1140, 1143 (8th Cir. 1998) (noting that, under the majority view, the doctrine of
judicial estoppel "applies only where the allegedly inconsistent prior assertion was
accepted or adopted by the court in the earlier litigation").

the hitting area after shagging balls on the practice fairway.  Hollinbeck, 113 N.W.2d at 11-

12.  The court held that "[i]f [the golfer] knew, or in the exercise of ordinary care should

have known, that plaintiff was in a zone of danger and was unaware of [the golfer's]

intention to hit, [the golfer] should have given him a warning or desisted from striking the

ball until plaintiff was in a place of safety."  Id. at 12-13.  The court did not discuss the

extent or nature of the instruction that took place prior to the accident, nor did it address

the instructor's liability.[9]

While Hollinbeck is relevant to the extent that it holds that a golfer on a practice

fairway normally has a duty of care to those in the "zone of danger," and this Court does not

challenge that proposition as a general matter, the facts of the instant case are

distinguishable from Hollinbeck in key respects.  Sorenson was hitting the ball under the

direct and close supervision and instruction of Paine, his golf instructor.  Paine's

instruction included a direction to "hit" or "swing" at a certain time.  The accident took

place in a classroom setting, during one-on-one instruction.  Furthermore, Sorenson was

only 11 years old at the time of the accident.  See Hollinbeck, 113 N.W.2d at 13 (in

holding that the plaintiff was not "guilty of contributory negligence as a matter of law"

noting that the plaintiff was a "boy of 14 years"). While the Court has no doubt that a golfer

normally must exercise reasonable care toward fellow golfers in the "zone of danger,"

---

[9]The plaintiff's case against the instructor had been dismissed in the trial court, and
the plaintiff did not appeal that ruling. Hollinbeck, 113 N.W.2d at 10.

under the unique facts of this case, that duty was shifted entirely to Paine.[10]  Therefore,

Hollinbeck is distinguishable from the instant case.

Accordingly, for all of the foregoing reasons, the Court concludes that the unique

facts of this case constitute an "exceptional case" in which Sorenson's duty was shifted to

Paine under the Restatement § 452, Sandborg, 615 N.W.2d at 64, and it will grant

Sorenson's Motion for Summary Judgment.

**Conclusion**

Based on the foregoing, and all of the files, records and proceedings herein, **IT IS**

---

[10]Wu also argues that the two experts she has retained in the instant action establish that Sorenson had a duty to look before he swung his club, and that he violated that duty by not doing so.  (Mem. in Opp'n at 7-8.)  Each of the experts appear to be qualified to offer an opinion as to the facts of the case; neither, however, addresses the specific circumstances of this case.  There is no discussion of the implication of a student golfer being instructed and directed at each phase of his swing, nor is there an opinion rendered as to the responsibilities and duties of a student under the direct, mid-swing, supervision of a golf professional.  Therefore, the Court determines that the expert opinions submitted by Wu in opposition to the instant Motion do not counsel against its determination that Sorenson's duty of care was shifted to Paine at the time of the accident.

**ORDERED** that Defendant's Motion to for Summary Judgment (Doc. No. 16) is

**GRANTED**, and Plaintiffs' Complaint (Doc. No. 1) is **DISMISSED WITH PREJUDICE**.

    **LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: July 17, 2006

                    s/Richard H. Kyle\
                    RICHARD H. KYLE\
                    United States District Judge